UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
LJENA L.,

                          Plaintiff,       <u>DECISION AND ORDER</u>
                                         1:21-CV-08056-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-----------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

      In January and February of 2019, Plaintiff Ljena L.[1] applied for

Disability Insurance Benefits and Supplemental Security Income Benefits

under the Social Security Act. The Commissioner of Social Security denied

the applications.  Plaintiff, represented by Olinsky Law Group, Howard D.

Olinsky, Esq., of counsel, commenced this action seeking judicial review of

the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383

(c)(3).  The parties consented to the jurisdiction of a United States

Magistrate Judge. (Docket No. 19).

      This case was referred to the undersigned on October 25, 2022.  The

parties, through counsel, filed a Joint Stipulation in lieu of Motions for

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 17). For the following reasons, Plaintiff is granted judgment on the pleadings and this matter is remanded for further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on January 22, 2019, and February 5, 2019, respectively, alleging disability beginning July 12, 2013. (T at 89-90, 97-98).[2]  Plaintiff's applications were denied initially and on reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on September 17, 2020, before ALJ Dennis Katz. (T at 57). Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 68-81). During the hearing, Plaintiff amended her alleged onset date to July 10, 2015. (T at 73).  The ALJ also received testimony from Chad Kollers, a vocational expert. (T at 82-87).

### B.    ALJ's Decision

On December 22, 2020, the ALJ issued a decision denying the applications for benefits. (T at 13-37).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2015 (the amended

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

alleged onset date) and met the insured status requirements of the Social Security Act through September 30, 2018 (the date last insured). (T at 19). The ALJ concluded that Plaintiff's breast cancer (status post-lumpectomy and radiation treatment) and mild degenerative disc disease of the lumbar spine with 14 degrees of dextroscoliosis were severe impairments as defined under the Act. (T at 19).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 22).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). (T at 23).  The ALJ found that Plaintiff retained the ability to lift and carry 50 pounds, stand and walk for 6 hours in an 8-hour workday, sit for 6 hours during an 8-hour workday, and perform frequent reaching, handling, and fingering. (T at 23).

The ALJ concluded that Plaintiff could perform her past relevant work as a food service/cafeteria worker. (T at 29).

In addition, and in the alternative, considering Plaintiff's age (53 on the alleged onset date), education (limited), work experience, and RFC, the

ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 30).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between July 12, 2013 (the original alleged onset date) and December 22, 2020 (the date of the ALJ's decision). (T at 30-31).  On July 26, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.   Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on September 28, 2021. (Docket No. 1).  On June 15, 2022, the parties, through counsel, filed a Joint Stipulation in lieu of motions for judgment on the pleadings. (Docket No. 17).

## II.  APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff's primary argument in support of her request for reversal of the Commissioner's denial of benefits relates to the ALJ's consideration of the medical opinion evidence.

### A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§

404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated

new regulations regarding the consideration of medical opinion evidence.

The revised regulations apply to claims filed on or after March 27, 2017.

*See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that

date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical

opinions," but rather considers all medical opinions and "evaluate[s] their

persuasiveness" based on supportability, consistency, relationship with the

claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a),

(b)(2).   The ALJ is required to "articulate how [he or she] considered the

medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and

supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent

with evidence from other medical sources and non-medical sources." *Dany*

*Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. §

416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

The record contains multiple medical opinions.  This Court will summarize the opinions and then turn to the ALJ's analysis.

### 1.    Dr. Empfield

In December of 2013, Dr. Maureen Empfield, a treating psychiatrist, completed a form in which she stated that she had been treating Plaintiff since May of 2013. (T at 708).  Dr. Empfield opined that Plaintiff should avoid lifting, carrying, pushing/pulling, walking, climbing, standing, stooping/bending, sitting, and travelling via bus or subway. (T at 708).  She diagnosed major depressive disorder and stated that Plaintiff was unable to work. (T at 708-709).

In July of 2019, Dr. Empfield completed a functional capacity assessment, in which she described Plaintiff has having a chronic mental disorder that is "serious and persistent." (T at 818).  Dr. Empfield declined to state how often Plaintiff might be absent from work due to her impairments, but indicated that Plaintiff experienced depressed mood, decreased energy, and difficulty concentrating or thinking. (T at 817-818).

### 2.   *Dr. MacKinnon*

Dr. David MacKinnon performed a consultative physical examination in April of 2019.  Dr. MacKinnon diagnosed status post lumpectomy and radiation for left breast cancer; history of skin cancer with removal; anxiety and depression; and general fatigue. (T at 813).

Dr. MacKinnon deferred judgment on Plaintiff's mental health to a psychiatrist, but characterized her prognosis as "good." (T at 813).  He opined that Plaintiff "should avoid more than mild to moderate physical exertion due to her generalized fatigue." (T at 813).

### 3.   *Dr. Antiaris*

Dr. Melissa Antiaris performed a consultative psychiatric evaluation in April of 2019.  She diagnosed unspecified depressive disorder and unspecified anxiety disorder. (T at 793).  Dr. Antiaris characterized Plaintiff's prognosis as "good" and opined that Plaintiff's psychiatric

concerns were not significant enough to interfere with her ability to function on a daily basis. (T at 793).

Dr. Antiaris assessed mild limitation in Plaintiff's ability to understand, remember, and apply complex directions and mild limitation in her ability to regulate emotions, control behavior, and maintain well-being. (T at 792-92). Dr. Antiaris attributed Plaintiff's difficulties to "lack of motivation." (T at 793). She opined that Plaintiff was not able to manage her funds. (T at 793).

### 4. Dr. Schmidt-Deyoung

In April of 2019, Dr. T. Schmidt-Deyoung, a non-examining State Agency review physician, found that there was insufficient evidence of disability as of the date last insured. (T at 93). Dr. Schmidt-Deyoung opined that Plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; sit/stand/walk for about 6 hours in an 8-hour workday; and did not have postural, manipulative, visual, communicative, or environmental limitations. (T at 105-106).

### 5. Counselor Davis

In July of 2019, Lauren Davis, LCSW, a treating mental health counselor, completed a functional capacity assessment in which she indicated a diagnosis of major depressive disorder, recurrent, severe. (T at 820). Counselor Davis assessed moderate impairment in Plaintiff's ability

to remember and apply information, with marked limitation in concentration, persistence, pace, and marked limitation with respect to adapting and managing herself in the workplace. (T at 822).  Counselor Davis opined that Plaintiff would likely be absent from work more than 4 days per month due to her impairments. (T at 823).

### 6.   PA Robinson

In July of 2019, Jennifer Wins Robinson, a treating physician's assistant, completed a functional capacity assessment form, in which she explained that Plaintiff was incapable of even "low stress" jobs, would need to take unscheduled breaks at least every 30 minutes and would lie down and rest at unpredictable intervals during a workday. (T at 804-805).  Ms. Robinson opined that Plaintiff could occasionally lift/carry up to 5 pounds, but rarely/never lift/carry more than that. (T at 805).  She stated that Plaintiff would likely be absent from work due to impairments or treatment more than three times per month. (T at 806).

### 7.   Dr. Thompson

In July of 2019, Dr. Robert Thompson, a treating physician, completed a functional capacity assessment form.  Dr. Thompson reported that Plaintiff's symptoms were severe enough to interfere with her attention and concentration constantly during an 8-hour workday. (T at 874).  Dr.

Thompson believed Plaintiff could not perform even "low stress" work, opined that Plaintiff could rarely/never lift/carry any weight, and would have significant limitations in repetitive reaching, handling, fingering, and moving her neck. (T at 876).

### 8.    ALJ's Analysis (Fatigue)

The ALJ found Dr. Empfield's 2013 assessment of Plaintiff's physical limitations unpersuasive.  (T at 28).

The ALJ noted that Dr. Empfield's 2013 opinion pre-dated the amended alleged onset date by nearly two years. This is an appropriate reason for discounting it.  *See Carway v. Colvin*, No. 13 CIV. 2431 SAS, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014)(noting that "medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability"); *see also James N. v. Comm'r of Soc. Sec.,* No. 3:18-CV-1324 (CFH), 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020).

In addition, Dr. Empfield's statement that Plaintiff was unable to work is not entitled to persuasive weight, as that issue is reserved to the Commissioner.  *See Guzman v. Astrue*, No. 09-CV-3928 (PKC), 2011 WL 666194, at *10 (S.D.N.Y. Feb. 4, 2011)(treating provider's statement "that the claimant is 'disabled' or 'unable to work' is not controlling," because

such determinations are reserved for the Commissioner)(citing 20 C.F.R.

§§ 404.1527(e)(1), 416.927(e)(1)); *see also Snell v. Apfel*, 177 F.3d 128,

133 (2d Cir. 1999) ("A treating physician's statement that the claimant is

disabled cannot itself be determinative.").

The ALJ found Dr. MacKinnon's statement that Plaintiff "should avoid

more than mild to moderate physical exertion due to her generalized

fatigue" unpersuasive. (T at 27, 813).

The Court finds the ALJ's analysis was inadequate.  The ALJ

discounted Dr. MacKinnon's statement as "conclusory." (T at 27).  Notably,

however, it is not clear what additional detail the ALJ was expecting.

Plaintiff told Dr. MacKinnon she believed the fatigue was related to the

radiation treatment she received for breast cancer. (T at 810).  Dr.

MacKinnon appears to have credited this statement and recognized

"general fatigue" as one of Plaintiff's diagnosed conditions. (T at 813).

Further, Dr. MacKinnon explained that his conclusion that Plaintiff should

avoid more than mild to moderate exertion was made "[o]n the basis of [his]

examination." (T at 813).

Most importantly, the ALJ failed to consider the consistency between

Dr. MacKinnon's opinion and the assessments of the treating providers.

PA Robinson described Plaintiff as suffering from fatigue and opined that

she would need to lie down or rest at unpredictable intervals. (T at 802, 805). Dr. Thompson documented Plaintiff as suffering from fatigue. (T at 872). Dr. Empfield reported that Plaintiff had decreased energy, difficulty concentrating or thinking, sleep disturbance, exhaustion, and lethargy. (T at 816-17). Counselor Davis stated that Plaintiff was easily fatigued and experienced decreased energy. (T at 821).

The ALJ discounted Dr. MacKinnon's assessment of limitation related to fatigue without recognizing, or addressing, the consistency between this aspect of his opinion and the opinions of the treating providers. This was error requiring remand. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other.").

The ALJ found the opinions of PA Robinson and Dr. Thompson unpersuasive. (T at 27, 28). This was error for the same reason—the ALJ failed to acknowledge or address the extent to which the treating providers' opinions were consistent with each other (and with Dr. MacKinnon) regarding the question of fatigue.

In sum, three medical providers who treated or examined Plaintiff during the relevant period assessed work-related limitation due to fatigue.

The ALJ found Plaintiff capable of performing a range of medium work without reconciling this conclusion with the medical opinion evidence.  This was error requiring remand.

The Commissioner points to the assessment of Dr. Schmidt-Deyoung, the non-examining State Agency review consultant, in support of the ALJ's decision. (T at 25).

However, a State Agency review consultant opinion is, without more, insufficient to provide substantial evidence in support of a decision denying benefits. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990); *Gutierrez v. Kijakazi*, No. 21CV3211JPOVF, 2022 WL 16856426, at *16 (S.D.N.Y. Sept. 29, 2022), *report and recommendation adopted*, No. 21-CV-3211 (JPO), 2022 WL 16856936 (S.D.N.Y. Nov. 9, 2022).

Further, Dr. Schmidt-Deyoung referenced Dr. MacKinnon's assessment, including the limitation to mild to moderate physical exertion, and found the consultative examiner's opinion "consistent and supported by the evidence in the file …." (T at 104).  Dr. Schmidt-Deyoung did not explain how he reconciled this with the conclusion that Plaintiff could perform medium work and the ALJ did not recognize or address this issue at all.

Lastly, Dr. Schmidt-Deyoung's review was based on incomplete evidence, as the record at the time of review did not include the assessments from PA Robinson or Dr. Thompson.  *See Shawn H*, 2020 WL 3969879, at *8 ("Naturally, if nonexamining agency consultants have reviewed only part of the record, their opinions 'cannot provide substantial evidence to support the ALJ's [RFC] assessment if later evidence supports the claimant's limitations.'")(citations omitted).

For the foregoing reasons, the Court concludes that a remand is necessary for a proper assessment of the medical opinion evidence related to the impact of Plaintiff's diagnosed fatigue on her ability to perform work.

### 9.   ALJ's Analysis (Mental Impairments)

The ALJ recognized Plaintiff's anxiety and depression as medically determinable impairments but found them to be non-severe. (T at 19-22). The RFC determination includes no limitation with respect to Plaintiff's ability to perform the mental demands of basic work activity. (T at 23).

In reaching these conclusions, the ALJ found the opinions of Counselor Davis and Dr. Empfield unpersuasive. (T at 20).

The Court concludes that the ALJ's analysis was inadequate, particularly because he did not simply discount the treating mental health providers' assessments, but found that Plaintiff's mental impairments had

such a minimal impact on her ability to perform work-related function as to be "non-severe" under the Social Security Act.

The first reason cited by the ALJ for discounting Counselor Davis's opinion was that it was "rendered well after the date last insured." (T at 20).

However, the ALJ found Dr. Antiaris's opinion persuasive, even though it too was rendered after the date last insured. In explaining this aspect of his decision, the ALJ noted that there was "no indication in the record that [Plaintiff's] mental condition changed from September 30, 2018 [the date last insured] and April 9, 2019 [the date of Dr. Antiaris's examination]." (T at 20).

There is likewise no indication in the record that Plaintiff's mental condition changed from April 9, 2019, to July 18, 2019 (the date of Counselor Davis's report). Moreover, the fact that Counselor Davis's assessment post-dated the date last insured does not impact the consideration of Plaintiff's application for SSI benefits.

The second reason offered by the ALJ was that Counselor Davis's assessment was inconsistent with the "preponderance" of mental status examination, which the ALJ described as "generally benign." (T at 20).

The record reflects, however, that Plaintiff was consistently described as depressed, anxious, and/or having flat, constricted, or blunt affect. (T at 384, 486, 678, 841, 843, 846, 849, 851, 860, 861, 1206, 1251, 1661, 1667, 1672. 1676).  The ALJ's decision to discount the treating provider's opinion was not based on a reasonable reading of the treating history.  *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020)(cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

Further, the ALJ overrated the relevance of Plaintiff's ability to maintain somewhat appropriate attendance and affect during relatively brief, relatively infrequent (weekly or monthly) encounters with supportive medical professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R.

Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

The ALJ's error is compounded by the fact that Plaintiff's other treating providers likewise documented concern regarding her ability to perform work-related activities. Dr. Empfield described Plaintiff as having a chronic mental disorder that is "serious and persistent." (T at 818).  PA Robinson opined that Plaintiff was incapable of even "low stress" jobs, would need to take unscheduled breaks at least every 30 minutes, and would need to lie down and rest at unpredictable intervals during a workday. (T at 804-805).  And Dr. Thompson believed Plaintiff could not perform even "low stress" work. (T at 876).

The Commissioner cites Dr. Antiaris's assessment in support of the ALJ's decision.  It is significant, however, that the ALJ did not reconcile the medical opinion evidence by, for example, finding Plaintiff less limited than

the treating providers' assessments indicated, but still recognizing some level of impairment.

Rather, the ALJ discounted nearly entirely the assessments of all the treating providers, finding Plaintiff's anxiety and depression non-severe (T at 19-22) and formulating an RFC with no limitation whatever in Plaintiff's ability to perform the mental demands of work.

Dr. Antiaris's assessment is not sufficient to sustain this conclusion. The Second Circuit has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).

"This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

 The ALJ's reliance on the non-examining State Agency review consultants (Dr. Brown and Dr. Dambrocia), who assessed non-severe mental impairments, is insufficient for the same reason.

A remand, therefore, is necessary for proper consideration of the medical opinion evidence related to the limitations arising from Plaintiff's anxiety and depression.

B.      Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the foregoing reasons, the Court concludes that a remand is necessary for a proper assessment of the medical opinion evidence related to the impact of Plaintiff's diagnosed fatigue on her ability to perform work. In addition, a remand is necessary for proper consideration of the medical opinion evidence related to the limitations arising from Plaintiff's anxiety and depression.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff is GRANTED judgment on the pleadings and this matter is remanded for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: February 21, 2023          *s/Gary R. Jones*
                                  GARY R. JONES
                                  United States Magistrate Judge